J-A23020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JENNIFER MORRISSEY | : | |
| | : | |
| Appellant | : | No. 962 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 1, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0007677-2017

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED MARCH 17, 2021**

Appellant Jennifer Morrissey appeals from the judgment of sentence imposed following a jury trial and convictions for first-degree murder, possession of an instrument of crime, and tampering with or fabricating physical evidence.[1]  Appellant challenges several statements by the trial court as allegedly erroneous, among other issues.  For the reasons that follow, we affirm.

We adopt the facts and procedural history set forth in the trial court's opinion.  **See** Trial Ct. Op., 12/27/19, at 1-6, 8.  We add that Appellant did not object to the trial court's allegedly erroneous statements at issue in this

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a), 907(a), and 4910(1), respectively.

appeal, which were quoted in the trial court's opinion.  *Id.* at 4-5.  Appellant

did not file a post-sentence motion but filed a timely notice of appeal.  On

April 3, 2019, the trial court ordered Appellant to comply with Pa.R.A.P.

1925(b) within twenty-one days.  On August 12, 2019, Appellant filed an

untimely Rule 1925(b) statement.[2]

Appellant raises the following issues:

1. Did the trial court err in using the terms, "will prove", important,
and "significant" in its jury instructions and comment throughout
the trial[?]

2. Did the trial court err in not permitting the testimony of
witnesses who had physical struggles with [the] victim[?]

3. Did the trial court err in not limiting the fruits of the illegal
interrogation of Appellant[?]

Appellant's Brief at 1, 9, 10.

We briefly summarize Appellant's argument in support of her first issue.

Appellant contends that the trial court erred in stating that the

_____

[2] This Court's docket states that on April 30, 2019, the trial court gave Appellant a forty-five day extension of time within which to file a Rule 1925(b) statement.  Docket, 962 EDA 2019.  The trial court's docket and certified record, however, do not reflect any such request for or grant of extension of time.  In any event, even if a counseled Rule 1925(b) statement in a criminal matter was untimely filed, "this Court may decide the appeal on the merits if the [trial] court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal."  *Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*).  Because the trial court filed a responsive Rule 1925(a) opinion, we decline to remand.  *See id.*; *see also* Pa.R.A.P. 1925(c)(3).

Commonwealth's opening statement would refer to evidence that "will prove" Appellant's guilt.[3] *Id.* at 6. Appellant also challenges the trial court's description of a toxicology report that it refused to give to the jury during its deliberations as "significant."[4] *Id.* at 8. Appellant additionally argues that the court erred in describing the upcoming testimony of a Commonwealth's expert witness as "important."[5] *Id.*

---

[3] Specifically, Appellant's argument refers to the following comment by the trial court before opening statements: "The Commonwealth will begin by making an opening statement outlining what witnesses and/or evidence they expect to present and how that testimony or evidence will prove the defendant's guilty beyond a reasonable doubt." N.T. Trial, 1/24/19, at 7.

[4] Appellant apparently references the trial court's response to the jury's mid-deliberation request to take the toxicology report back to the jury room. *See* N.T. Trial, 2/1/19, at 27. The trial court responded:

> I'm not permitted to give you the toxicology report to take back to the jury room, but I can display it to you on the screen and read it to you. It's a significant report, but I'm going to ask you, again, if you can narrow down what it is that you're looking for, because there's finding that may not be relevant to the issue in this case . . . .

*Id.*

[5] Appellant was referring to the trial court's comments to the jury before dismissing it for the day. N.T. Trial, 1/28/19, at 207. Specifically, after noting that the Commonwealth would be calling an expert witness the next day, the trial court stated:

> It's been a long day. I think that we will end today now, come back tomorrow morning, start fresh. It's important testimony, and it may be challenging testimony to understand. I'm not sure. I haven't heard it. But I think that we will do better starting tomorrow morning.

This Court has held:

> [o]ur Pennsylvania Rules of Appellate Procedure and our case law set forth the well-established requirements for preserving a claim for appellate review. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).

*Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa. Super. 2016); *see also Commonwealth v. Smith*, 213 A.3d 307, 309 (Pa. Super. 2019) (stating "it is axiomatic that issues are preserved when objections are made timely to the error or offense." (citation omitted and some formatting altered)), *appeal denied*, 223 A.3d 1286 (Pa. 2020). A necessary corollary is that if a court is unaware of a particular issue, then it cannot act on it. "We have explained that if appellate courts were to consider issues not raised in the trial court, then the trial would become a dress rehearsal and would give an unfair advantage to the ill-prepared advocate." *Commonwealth v. Dennis*, 695 A.2d 409, 411 (Pa. 1997) (citation omitted). We may also affirm on any basis. *Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa. Super. 2010).

Here, Appellant failed to object to any of the statements at issue, and therefore failed to preserve her arguments for appellate review. *See* Pa.R.A.P. 302(a); *Dennis*, 695 A.2d at 411; *Phillips*, 141 A.3d at 522. Regardless, even if Appellant preserved her claims, we would agree with the trial court's

*Id.*

resolution of her issues on the merits. *See* Trial Ct. Op. at 4-7; *see also* Pa.R.Crim.P. 647(E) (permitting trial court to issue additional instructions to the jury as the court deems necessary). We therefore hold Appellant is due no relief, albeit on partially different grounds. *See Clouser*, 998 A.2d at 661 n.3.

In support of her second issue, we reproduce Appellant's argument in its entirety:

> During pre-trial motions the trial [court] decided that two young ladies who knew the victim and had been in his house on previous occasions could not testify. The general reason or basis for their testimony were that they had been in the [victim's] house, knew he like[d] to tussle, especially since he did it with them. This testimony would have been used to help corroborate the Appellant's defense that there was a struggle for the gun in question. Although it is difficult to put a victim on trial it is necessary on occasion. This was one of those occasions as the victim like[d] to have young women in his home and he liked to get physical.
>
> The testimony was denied thereby depriving the Appellant the opportunity to present witnesses to assist in her defense.

Appellant's Brief at 9 (some formatting altered).

Instantly, a review of the Commonwealth's pre-trial omnibus motion and the transcript of the hearing resolving all of the parties' pre-trial motions, reveals that Appellant did not object, discuss, or argue about any "young ladies" who knew the victim, let alone that the victim liked to "tussle" with them. Further, there is no indication that the trial court issued a ruling on this point. Therefore, Appellant waived the issue. *See* Pa.R.A.P. 302(a); Trial Ct. Op. at 7 (noting that this "allegation of error is not clearly or explicitly stated"

and that "Appellant did not attempt to present testimony or any other evidence regarding the victim's past conduct or interactions with a younger female"). Moreover, Appellant waived the issue by failing to cite or discuss any applicable legal authorities. *See* Pa.R.A.P. 2119. Indeed, Appellant's table of authorities cites only to Pennsylvania's Suggested Standard Criminal Jury Instructions. Appellant's Brief at ii.

In any event, by way of background, Appellant opposed the Commonwealth's pretrial motion to exclude a 2005 protection from abuse (PFA) petition filed by the victim's ex-wife against the victim. N.T. Pretrial Hr'g, 11/19/18, at 56. Appellant wished to have the PFA admitted into evidence but the trial court granted the Commonwealth's motion because Appellant was unaware of the PFA and therefore she could not use it to bolster any theory of self-defense. Here, the record did not include any mention of any young women who liked to "tussle" in the PFA to arguably support Appellant's argument. *See* Pa.R.A.P. 2119. Accordingly, we affirm on the basis of the trial court's opinion. *See* Trial Ct. Op. at 7-8 (stating the reasons why it excluded the PFA, which included that Appellant was unaware of the allegations in the PFA). For these reasons, Appellant is not due relief. *See also Clouser*, 998 A.2d at 661 n.3.

For her final issue, we note that Appellant's brief stated she would abandon it. Appellant's Brief at 1. However, in her summary of the arguments, Appellant outlined her argument for her third issue, specifically

alleging that the trial court erred by not prohibiting "the fruits of [her] interrogation." *Id.* at 5. Appellant asserts that "the Commonwealth learned the identity of a potential co-defendant and eventually a Commonwealth witness." *Id.* In sum, Appellant is arguing that although the trial court granted her motion to suppress the police interrogation, the trial court erred by not suppressing the fruits, *i.e.*, the aforementioned identity of the potential co-defendant. *See id.*

Even if Appellant did not abandon her issue, we nonetheless agree with the trial court that Appellant waived this issue for appellate review due to her vague Rule 1925(b) statement. *See* Trial Ct. Op. at 4; Pa.R.A.P. 1925(b); *Commonwealth v. Dowling*, 778 A.2d 683, 686-87 (Pa. Super. 2001) (holding that a Rule 1925(b) statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all"). The trial court stated that it "cannot even guess the underlying basis for this allegation of error. As such, we respectfully request that this allegation be dismissed or considered waived." *See* Trial Ct. Op. at 8. Accordingly, for these reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 3/17/2021*

See attached
list
12.27.19

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :
                                        :    CP-09-CR-0007677-2017

           v.                           :

                                             :

JENNIFER MORRISSEY                    :

---

## OPINION

Jennifer Morrissey ("Appellant") appeals to the Superior Court of Pennsylvania from our judgment of sentence entered on April 30, 2019. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## I.    FACTUAL HISTORY

On August 8, 2017, pursuant to a 9-1-1 phone call, members of the Upper Makefield Police Department responded to 1050 River Road in Washington Crossing, Pennsylvania. Upon arrival, Officers discovered a male occupant of the residence unresponsive with a single gunshot wound to the head. The victim, identified as Michael McNew, was determined to be deceased. No weapon was found in the vicinity of the body. A shell casing was found to the right of the chair in which McNew was sitting. The scene was otherwise undisturbed, and there was no sign of a struggle.

Appellant, a live-in girlfriend of the victim, was developed as a suspect. Her cell phone was seized and searched pursuant to a warrant. The phone contained user deleted chat files created on August 6, 2017, immediately prior to the estimated time of McNew's death. These files were part of an ongoing argument between Appellant and McNew regarding her relationship status with another man. As part of this argument, Appellant threatened to come to McNew's house and kill

1

him. Appellant's cell phone revealed it had auto-connected to the wireless router at McNew's home at 9:37 p.m. on August 6, 2017, establishing the phone was within 150 feet of the router at the time of the connection. The time of connection was within the estimated parameters of the time of McNew's death. Experts using cell tower technology were able to trace the location of Appellant's cell phone during several critical periods of time.

In an interview with police, Appellant insisted she had not resided with McNew for several months and knew nothing about his death. However, Appellant testified at trial that she killed McNew by accident when the gun unintentionally went off. She ran from the house, then returned a few hours later to make the crime scene look like a robbery. The next day she sent texts and facebook messages to the victim despite knowing he was dead. Appellant never called the police. Throughout her testimony, Appellant shifted her testimony between an accidental shooting and a shooting in self-defense.

## II. PROCEDURAL HISTORY

Appellant was arrested and charged with criminal homicide and related offenses on August 25, 2017. A preliminary hearing was held on November 6, 2017 and all charges were held for court. Arraignment in the Court of Common Pleas was on December 8, 2017. Pre-trial motions were filed by both sides and hearings were held on said motions on August 16 and November 19, 2018. Orders deciding all pre-trial motions were filed on January 10 and 16, 2019. A jury trial was conducted over the course of eight days from January 22 until February 1, 2019. At this trial, twenty-three (23) witnesses (including Appellant) testified and eighty-six (86) exhibits were entered into evidence. After more than ten (10) hours of deliberation, the jury found Appellant

guilty of 1st Degree Murder,[1] Tampering with Physical Evidence,[2] and Possessing an Instrument of a Crime.[3] The jury found Appellant not guilty of Burglary[4] and Criminal Trespass.[5]

On March 1, 2019, Appellant was sentenced to serve a term of incarceration in a state correctional institution for Life Without Parole for the charge of 1st Degree Murder. No further penalty was imposed on the remaining charges. On March 29, 2019, Appellant timely filed a Notice of Appeal to the Superior Court. On April 2, 2019, this Court directed Appellant to file a Concise Statement of Matters Complained of on Appeal pursuant to Rule 1925(a).

## III.    STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In compliance with this Court's Order, Appellant timely asserted the following issues, *verbatim*, on appeal:

1.  The Court, on three occasions when addressing the jury made comments that were clearly biased for the prosecution and detrimental to the Defendant's defense and right to a fair and impartial trial.
    a.  In the opening remarks the Court stated: The Commonwealth will begin by making an opening statement outlining what witnesses and/or evidence they expect to present and how that testimony or evidence **will prove** the Defendant's guilt beyond a reasonable doubt. (Day 2- N.T. lines 20-25, p. 7) (emphasis in original);
    b.  On another occasion, when the Court was giving end of the day instructions, the Court stated: "the next witness for the Commonwealth is an expert witness who may take some period of time to testify... It's **important testimony**, and it may be challenging to understand." (Day 4- N.T. p.27- lines 14-18) (emphasis in original);
    c.  The Court also made a comment about evidence while the jury was in the midst of deliberation, when they came back into the room with requests to see evidence. The evidence in question was the Toxicology Report. The Court stated: "Im [sic] not permitted to give you the toxicology report to take back to the jury room, but I can display it to you on the screen and read it to you. It's a

---

[1] 18 Pa.C.S. §2501(a); 18 Pa.C.S. §2501(b)
[2] 18 Pa.C.S. § 4910(1) – Tamper with Physical Evidence
[3] 18 Pa.C.S. § 907(a) – Poss. Inst. Of Crime
[4] 18 Pa.C.S. § 3502(a)(1)(ii) – Burglary
[5] 18 Pa.C.S. § 3503(a) – Criminal Trespass

3

**significant report...**" (Day 8- N.T. p.27- lines 14-18) (emphasis in original);

2. The court erred in denying the Defendant the opportunity to present testimony regarding the victim's past conduct, especially with younger female.

3. The Court granted Defendant's request to exclude her interrogation of August 28, 2017. However, the Court failed to exclude any and all information that was the fruit of this interrogation or stemmed from the inappropriate interrogation.

## IV.    DISCUSSION

Appellant claims we made comments to the jury that were clearly biased for the prosecution and detrimental to the Defendant's defense and right to a fair and impartial trial. This is simply not true.

The first comment Appellant challenges occurred during our preliminary instructions to the jury. Appellant claims our instruction that the prosecutor will begin by making an opening statement outlining their case and how that "testimony or evidence will prove the defendant's guilt beyond a reasonable doubt" was somehow biased. This statement explains to the jury the purpose of an opening statement – to give an overview of the anticipated evidence and how that evidence relates to the legal burden of proof. Appellant's emphasis on words that were not emphasized is misleading but does not establish error.

In context, we gave the following preliminary instructions, *verbatim*:

> So let me now tell you how this case is going to proceed. The Commonwealth will begin by making an opening statement outlining what witnesses and/or evidence they expect to present and how that testimony or evidence **will prove** the defendant's guilt beyond a reasonable doubt. This is a criminal case, and in a criminal case the defendant is presumed to be innocent unless and until the Commonwealth proves their guilt beyond a reasonable doubt.
>
> The Commonwealth has the burden to prove each element of each criminal charge filed against the defendant beyond a reasonable doubt. If they fail to do so, you must find the defendant not guilty.
>
> ...
>
> Once testimony is closed, the attorneys will have an opportunity to present closing arguments to you, which is their opportunity to summarize the evidence and argue why

4

that evidence either does or does not establish the defendant's guilt beyond a reasonable doubt.

*N.T.* 01/24/19, pp. 7-8, 10 (emphasis added).

In addition, after closing arguments, but before the jury was sent to deliberate, we gave the following instructions, *verbatim*:

> Furthermore, the defendant is presumed innocent throughout the trial, unless and until you conclude, based on careful and impartial consideration of the evidence, the Commonwealth has proven her guilty beyond a reasonable doubt. It is not the defendant's burden to prove [that] she is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged, and that the defendant is guilty of that crime, beyond a reasonable doubt.
>
> The person accused of a crime is not required to present evidence, or prove anything in his or her own defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that the defendant is guilty, then your verdict should be guilty.

*N.T.* 01/31/19, pp. 195-96.

Appellant is inappropriately emphasizing a portion of one sentence from all of our instructions to the jury, misreading it, and alleging it is clearly biased for the prosecution. She uses the same formula for her second comment. Appellant asserts we erred by telling the jury that the next witness was to give "important testimony." Specifically, we stated to the jury:

> All right. Ladies and gentlemen, the next witness for the Commonwealth is an expert witness who may take some period of time to testify, longer than an hour. It's been a long day. I think that we will end today now, come back tomorrow morning, start fresh. It's important testimony, and it may be challenging testimony to understand. I'm not sure. I haven't heard it. But I think that we will do better starting tomorrow morning.

*N.T.* 01/28/19, pp. 206-07.

This statement was made at the end of testimony in the late afternoon on the fourth day of trial. Witnesses had already provided over nine (9) hours of testimony and the next scheduled witness was Detective Anthony Vega. We had previously instructed the jury that all evidence introduced during trial was important. We stated the expected testimony was important testimony.

5

We did not state it was more important than any other testimony. In fact, we told the jury that we had not yet heard the testimony and were not sure of its complexity.

Appellant also asserts we erred when addressing the jury's request to have the toxicology report in the jury room. This report was admitted into evidence as Commonwealth Exhibit twenty-one (21). It was admitted through the testimony of Dr. Zhongxue Hua and consists of a three (3) page report authored by Denice Teem from National Medical Service Labs. In denying the jury's request to take the report to the jury room, we made the following statement:

> I'm not permitted to give you the toxicology report to take back to the jury room, but I can display it to you on the screen and read it to you. It's a **significant report**...

*N.T.* 02/01/19, pp. 27 (emphasis added).

As with the previous comments, Appellant places emphasis where there was none. This was a passing reference contained in an explanation to the jury of an evidentiary ruling. It is difficult to understand how a reference to a toxicology report as a "significant report" is "detrimental to the Defendant's defense and right to a fair and impartial trial."

Pennsylvania Rule of Criminal Procedure 647(E) governs the discretion given to the trial judge in addressing the jury during a criminal trial:

> "The trial judge may give any other instructions to the jury before the taking of evidence or at anytime during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case."

Further, the explanatory comment explains that this Rule:

> "...recognizes the value of jury instructions to juror comprehension of the trial process. It is intended that the trial judge determine on a case by case basis whether instructions before the taking of evidence or at anytime during trial are appropriate or necessary to assist the jury in hearing the case. The judge should determine what instructions to give based on the particular case, but at a minimum the preliminary instructions should orient the jurors to the trial procedures and to their duties and function as jurors. In addition, it is suggested that the instructions may include such points as note taking, the elements of the crime charged, presumption of innocence, burden of proof, and credibility."

6

*Comment Paragraph (E)*, Pa. R. Crim P. 647(E).

Further, an instruction by a judge to the jury "will be upheld if it clearly, adequately, and accurately reflects the law." Commonwealth v. Spotz, 759 A.2d 1280, 1287 (Pa. 2000). A trial judge has wide latitude in explaining difficult legal concepts to the jury; any explanation is permissible to the extent that the statements accurately convey the law. Commonwealth v. Hawkins, 701 A.2d 492 (Pa. 1997). In Spotz, Appellant challenged a judge's instruction to the jury, stating that the judge "over-emphasized the relevance of the evidence." Id. at 1287. The Pennsylvania Supreme Court held the instruction was proper, since it accurately explained the law. Id.

In this case, we thoroughly explained to the jury concepts regarding burden of proof, presumption of innocence, credibility of witnesses, and the role of the jury. Our instructions were accurate and intended to be considered as a whole. To the extent that any of our instructions were deficient if viewed alone, it is respectfully submitted that said deficiencies were cured by reading all instructions as a whole.

Next, Appellant claims we erred in denying her the opportunity to present testimony regarding the victim's past conduct, especially with a younger female. This allegation of error is not clearly or explicitly stated. During trial, Appellant did not attempt to present testimony or any other evidence regarding the victim's past conduct or interactions with a younger female. Accordingly, we can only guess that Appellant is appealing our pre-trial decision granting the Commonwealth's Motion to Exclude Divorce and PFA Records of the victim at trial.

If the allegation does relate to this decision, we note that a hearing was held on November 19, 2018 regarding the Commonwealth's motion. More specifically, the Commonwealth requested a pre-trial ruling that allegations contained in a petition filed pursuant to the Protection

From Abuse (PFA) Act against the victim be excluded from trial in this case. We determined: (1) the allegations were more than ten (10) years old; (2) the allegations were not part of a criminal investigation; (3) there was not a conviction resulting from the allegations; (4) there was not a hearing regarding the allegations; (5) the defendant was not aware of the allegations. Accordingly, applying established case law, Commonwealth v. Ignatavich, 482 A.2d 1044 (Pa. Super. Ct. 1984), we granted the Commonwealth's motion. If Appellant is now claiming we erred by not admitting the aforesaid allegations into evidence, we respectfully submit that her allegation of error is so vague that it is functionally equivalent to no concise statement at all and Appellant has waived this contention. See Tucker v. R.M. Tourts, 939 A.2d 343 (Pa. Super. Ct. 2007); Commonwealth v. Heggins, 809 A.2d 908 (Pa. Super. Ct. 2002).

Appellant filed a pre-trial Motion to Suppress statements made by her while in police custody on August 28, 2017. We held a hearing on this Motion on November 19, 2018. Thereafter, we made Findings of Fact and Conclusions of Law and granted Appellant's Motion to Suppress. Our Findings of Fact were based on the testimony and evidence presented at the hearing. Our Conclusions of Law were based on the Findings of Fact. Appellant has not alleged or demonstrated error in these Findings or Conclusions. She now claims we "failed to exclude any and all information that was the fruit of this interrogation or stemmed from the inappropriate interrogation." However at trial, Appellant did not object to any testimony or other evidence on the grounds it was the fruit of, or stemmed from, the August 28, 2017 interview. She has neither alleged, nor demonstrated, a single instance where information that was the fruit of, or stemmed from the August 28, 2017 interview, was used against her. We can not even guess the underlying basis for this allegation of error. As such, we respectfully request that this allegation be dismissed or considered waived.

## V.  CONCLUSION

**WHEREFORE**, for the foregoing reasons, it is respectfully submitted this Honorable

Court **DENY** and **DISMISS** the relief requested by Appellant.

BY THE COURT:

DATE: 12/27/2019

RAYMOND F. MCHUGH, J.

N.B. it is your responsibility
to notify all interested parties
of the above action.

CLERK OF COURTS
BUCKS COUNTY
2019 DEC 27 P 2:35
RECEIVED

**Commonwealth of PA v. Jennifer Morrissey**
**No. 7677-2017**

**Copies to:**

Harry J. Cooper, Esquire
Via email: supergolfer925@aim.com

Christopher Rees, Esquire
Via email: cwrees@buckscounty.org

Superior Court of Pennsylvania
530 Walnut Street
Suite 315
Phila., PA 19106